**HUTSON, Plaintiff, v. HUTSON, Jr., Defendant.**

Common Pleas Court, Fayette County.

No. 21775.   Decided June 11, 1954.

Charles S. Hire, Washington C. H., for defendant.
Otis B. Core, Washington C. H., for plaintiff.

**OPINION**

By CASE, J.

This is a divorce case in which the records show that Plaintiff's petition, together with a motion seeking a reasonable sum for her support and expenses and for the support of two minor children of the parties during the pendency of this action, were filed on March 31, 1954.

Notice of the filing of said petition and of the aforesaid motion for support and expense money were duly given and served on said Defendant, and said motion came on for hearing and was heard by the Court on April 8, 1954, at which time and place both parties to this action were present, represented by counsel, and testified with respect thereto.

On April 8, 1954, the court made and issued the following order:

"On motion of the plaintiff herein, and good cause being shown, it is hereby ordered that she be allowed the sum of $250.00 per month for the support and maintenance of herself and two minor children during the continuance of this action, and that she be allowed the sum of $100.00 as and for her expenses in conducting this action.

"It is therefore ordered that the said Frank L. Hutson, Jr., pay to the Clerk of this Court the sum of $250.00 on or before Saturday, April 10, 1954; and also the sum of $250.00 upon the 10th day of each and every month during the continuance of this action.

"It is further ordered that the said Majorie Lee Hutson have the possession and use of the household furniture during the pendency of this suit; and the said Frank L. Hutson, Jr. is hereby enjoined from interfering with or disturbing her in the possession and use thereof. To all of which defendant excepts."

and on April 16, 1954, this court made and issued the following supplemental order with respect thereto:

"The Court, on its own motion, coming now to consider its order hereinbefore made and issued on April 8, 1954, requiring said Defendant to make certain payments to the Clerk of this Court, as and for support and maintenance of said Plaintiff and two minor children and for expenses in prosecuting this action; and it appearing that the Court contemplated and intended that said amounts, so paid and received, should be subject to the fees and charges authorized and required by §2303.20(K) R. C., and the remaining balance thereof distributed to Plaintiff as and for the purposes above stated; and that specific instructions with respect thereto were inadvertently omitted from the aforesaid order, the Court finds:

"That a supplemental order should be made herein to clarify the aforesaid order and to specifically instruct said Clerk with respect to the receipt and disbursement of said payments.

"It is, therefore, ordered that the aforesaid order, hereinbefore made and issued on April 8, 1954, be, and hereby the same is, supplemented to provide that said Clerk of Courts be, and hereby said Clerk is, ordered to charge and collect, out of said payments so made, the fees and charges authorized and required by the provisions of §2303.20 (K) R. C., and to distribute the balance of said payments to the Plaintiff as and for the purposes above stated.

"It is further ordered that, in all other respects, the aforesaid order of April 8, 1954, be, and hereby the same is, readopted and reaffirmed as if fully rewritten herein."

On June 1, 1954, the following motion was filed herein:

"Now comes the defendant and moves the Court that the former order of this Court made and issued on the 8th day of April, 1954, be vacated and modified for the following reasons, to-wit:

"1. That said order is unreasonable, unjust and impossible of compliance, due to lack of employment or earnings on the part of said defendant.

"2. That said defendant has been out of employment since the 8th day of April, 1954, until the 2nd day of June, 1954; that under terms of new employment defendant will receive a gross salary of $3,600.00 per year or an approximate net of $3,346.00 or an approximate monthly salary of $279.00 per month.

"WHEREFORE, defendant moves the Court to modify said former order of this Court in accordance with the present conditions existing relative to the earnings of this defendant."

On June 2, 1954, the following motion was filed herein:

"Now comes plaintiff through her attorney and says that

the defendant has disobeyed the order of the Court heretofore made on the 9th day of April, 1954, concerning temporary alimony and has refused to comply with said order and therefore plaintiff asks for an order of this Court requiring defendant to appear and show cause why he should not be punished as for contempt of Court."

Upon agreement of counsel for the respective parties and by leave of Court first had and obtained, said motions were scheduled and assigned for hearing simultaneously on June 8, 1954, at which time and place each of said parties were present, represented by counsel, and testified with respect thereto.

**FACTS REFLECTED ON THE RECORD MADE DURING THE PRIOR HEARING HELD ON APRIL 8, 1954**

From the evidence adduced on behalf of Plaintiff, at said hearing on April 8, 1954, it appears:

1. That Plaintiff and the two minor children · were then residing in the upper duplex at 128½ West Temple Street, Washington C. H., Ohio; and that said duplex consisted of three rooms, a kitchen and a bath;

2. That Plaintiff and Defendant had lived together in said duplex from October 1952 to the latter part of March, 1954;

3. That the established rental for said duplex was $50 per month, although Defendant had never been required to pay any rental during such occupancy, and that Defendant's mother owned said premises and had paid for all utility services during such occupancy by the parties;

4. That Plaintiff and Defendant separated on or about March 27, 1954;

5. That Plaintiff performed all the normal duties of a housewife, including the laundry, and cared for the children during such occupancy;

6. That Plaintiff was 25 years old, had anemia and also suffered with a pelvic and spinal condition which required regular medical care and treatment since February 1953; that Plaintiff had not experienced any such physical difficulties prior to marriage to said Defendant; and that Plaintiff's doctors had prescribed that Plaintiff should do no lifting and should not go up and down stairs;

7. That Plaintiff was employed at the time said parties were married and continued to be employed for a year or more after the marriage; and that Plaintiff was never furnished any funds by Defendant upon which to budget the household expenses or with which to buy groceries, clothing and to obtain dry-cleaning or other incidental household expenses; and

8. That Plaintiff estimated that the following amounts would be necessary and required for the support of the minor children and herself during the pendency of the action:

(a) Groceries and milk, per month _____$100
(b) Electricity, Gas & Telephone _____  20
(c) Dry-Cleaning service _____  15
(d) House rent _____  50
(e) Medical care (Plaintiff & Children) ____  40
(f) Clothing and other necessary incidentals
    For Children and Plaintiff _____  40
                                             ————
          TOTAL_____(per month)_____$265

From the evidence adduced on behalf of Defendant, at said hearing on April 8, 1954, it appears:

(A) That Defendant was 35 years old; that the parties were married at Newport, Kentucky, January 15, 1949; and that two children, Frank Loring Hutson, III, aged 3½ years, and Patricia Ann Hutson, aged 2½ years, were born as the issue of said marriage;

(B) That, prior to the filing of this action, said parties and their children resided in an upper duplex owned by Defendant's mother, and that the parties occupied said premises "rent free;"

(C) That some of the furniture used in their occupancy of said premises consisted of an antique bedroom suite owned by Defendant's sister Helen Hutson;

(D) That Plaintiff had been suffering from some physical difficulty with her back for which she had been receiving medical treatment from Dr. Woodmansee and Dr. Persinger, and for which there was a bill owing to Dr. Woodmansee of approximately $65 or $70;

(E) That Defendant owed past due accounts for milk which required Plaintiff to pay cash for milk purchased for herself and children since the parties had separated;

(F) That Defendant did not own an automobile but had been previously employed by The Tennessee Corporation as a salesman during the calendar year 1953, and had drawn approximately $4,905.27 as salary from such employment during 1953, and that said employment had been terminated about November 1, 1953; and that Defendant had not been employed since that date;

(G) That, during the aforesaid employment, Defendant had owned an automobile but had disposed thereof and no longer owned an automobile; and that Defendant did not own any real estate, stocks or bonds, and had no savings or checking account in any bank;

(H) That, prior to said employment with The Tennessee Corporation, Defendant had been employed by Kroger Babb for approximately one and one-half years and was earning

$125 per week when leaving Babb's employment; that Defendant's earnings while working for Babb had averaged $150 per week out of which Defendant paid his own traveling expenses; and that Plaintiff had also been employed during that time and had earned $50 per week;

and, beginning at page 33 of the record, the hearing on April 8, 1954, proceeding to conclusion as follows:

"Q: You and your wife paid all of your expenses?

"A: Yes.

"Q: Did you feel it most profitable to leave that company and go to work for Tennessee Corporation?

"A: I would say it was more profitable.

"Q: Were you able to save or partly save any money?

"A: No.

"Q: You were not?

"A: No.

"Q: You say you have no property at the present time?

"A: No sir.

"Q: Now, Frank, since November of 1953 have you attempted to obtain other employment?

"A: Yes.

"Q: And have you so obtained any employment?

"A: Not as yet.

"Q: Have you immediate prospects?

"A: Yes.

"Q: With what company or individual or concern?

"A: Well, I have a prospect of going into Chamber of Commerce work. I also have a chance to work at North American until maybe the other job comes through. I also have a chance for a job in Washington D. C.

"Q: Are you familar with what the salary of those jobs would be?

"A: No, I am not. As a matter of fact I did have an interview with a man and he is making an appointment for me to see this man at North American. However, the question of salary, of course, I wouldn't know.

"Q: You are endeavoring to obtain work?

"A: Absolutely.

"Q: Now, the money that you paid your wife last week was $35?

"A: That is correct.

"Q: From what source did you obtain those funds?

"A: My mother.

"Q: Is that the only source you have of obtaining funds?

"A: That is correct.

"Q: Has your mother supported you and supported your wife and children?

"A: That is correct.

"Q. Do you have any present indebtedness, Frank?

"A: Yes.

"Q: What and to whom?

"A:Well, I would say . . . you mean the full amount?

"Q: Yes.

"A: Well that is rather hard to set a figure, but I would say in the area of $500 or $600.

"Q: Now, have you made available since your separation a place to live, for your wife and minor children?

"A: Yes sir.

"Q: Is that the apartment where she is residing?

"A: That is correct.

"Q: That apartment is owned by your mother?

"A: That is correct.

"Q: Have you attempted to supply your wife and family with the necessities of life?

"Q: Have you an arrangement with your mother with a promise of payment in the future or otherwise?

"A: Yes. You asked me if I had provided the necessities of life to my wife and children. I have provided her with what they have asked for. They asked me for $25 I gave them $25.

"Q: When you were living together Frank what did the weekly grocery account amount to?

"A: Oh, I would say around $15 or $16 or something like that.

"Q: Are you willing to tell the court that in so far as you are concerned your wife may continue to occupy the apartment that she is now occupying rent free with present utilities furnished, Mr. Hutson?

"A: Yes sir.

"Q: What amount of money are you able to pay through borrowing or otherwise for the support of your minor children?

"A: When one isn't gainfully employed that is a rather difficult statement to make. I do want to do the right thing by my children. I want to pay without furthering my indebtedness but by the same token I want my children to have whatever they need.

"That is all.

**"BY THE COURT:**

"Q: As the court understands by your testimony your employment with the Tennessee Corporation terminated on or about November 1, 1953. What was the first date that you recall after November 1st that you first attempted to secure employment?

"A: It had to be during the month of November because I went to Chicago . . . my wife, my sister and myself for the

purpose of seeking employment and I know that it had to be approximately right after my termination of employment for the simple reason it was the last football game of the year, so it had to be during November.

"Q: Apparently that effort was unsuccessful?

"A: No sir. This particular employment is concerned with the National Tax Equalization of which a man by the name of Vernon Scott is the President of. Mr. Scott is presently in the process of organizing a new organization to further the promotion among the smaller business men of the country. Such an organization, your Honor, naturally entails quite a bit of work and a lot of detail in getting ready and Mr. Scott had told me that he thought I would be able to go to work for them the first of the year. Getting back to what I had just mentioned I reiterate the fact that in organizing this company it takes time and the first of the year, he wasn't ready to start with the new company. As a matter of fact I have a letter from him dated February 18th and he said that he felt that he was not going to take on high salaried executives just to sit around and do nothing.

"Q. Was salary mentioned at the time of the interview?

"A: Mr. Scott did discuss salary. I did, your Honor. That was just a matter of conversation. Naturally, I asked him what type of salary the position would pay.

"Q: Did he indicate what that amount would be?

"A: Yes.

"Q: How much?

"A: $12,000 a year.

"Q. Now when did you receive that letter, about the first of the year?

"A: February 18th.

"Q: However, at that time he gave no mention as to prior comments of your going to work the first of the year?

"A: That is correct.

"Q: After that interview you were pretty sure that you would be employed with his firm?

"A: That is right.

"Q: What was the next effort to secure employment?

"A: Well, your Honor, I had talked to Olen Waite, Chamber of Commerce on several occasions concerning the chamber of commerce work.

"Q. When did this conversation take place?

"A: Well, I have discussed that with Olen several times.

"Q: As a result of your conversation, nothing definite was forthcoming in the Chamber of Commerce?

"A: That is right.

"Q: So what was your next effort?

"A: Well, getting back to Vernon Scott, I have talked to him on the telephone in Chicago. It is one of those things, it was just around the corner. Until this week, I actually had to get a job no matter what it was to have a source of income until maybe a better job came around.

"The court has no further questions.

"DEFENDANT RESTS

"THE COURT: Now the court understands from the opening statement that there had been some negotiations between the parties concerning at least the possibility as to temporary alimony and support and expense money during the pendency of this action and that those negotiations did not meet with any satisfactory conclusion to the parties. The court also notes that during the past two weeks the defendant has paid $35 as and for support and maintenance. There is one more question I would like to ask the defendant and the defendant may answer from where he is sitting.

"Q. Have you been ill or physically disabled since the termination of your employment with the Tennessee Corporation?

"A. No sir.

"Now the court desires to ask one further question of counsel concerning the application for expense and support money. Is the court to understand that the expenses so mentioned in the motion include the cost of prosecuting the action?

"MR. CORE: It is satisfactory to the counsel as to the attorney fees after the six weeks has elapsed.

"The court coming now to consider the petition and the motion herein filed on March 31st and the testimony and evidence adduced at this hearing, finds that the defendant should obtain regular and steady employment and should pay to the plaintiff as and for temporary alimony and support money for the minor children of the parties the sum of $250 a month and $100 as and for court costs and expenses in prosecuting this action.

"Now does counsel have any question as to the place or method of payment?

"MR. CORE: I believe it would be best to be paid to the Court, is that right, Mrs. Hutson?

"A: Yes.

"THE COURT: Then the payment of support money should be made to the clerk of courts.

"MR. HIRE: If the court please, what is the date of commencement of that payment?

"THE COURT: The commencing would be as of the date of hearing. The court feels that there is certainly no au-

thority to go back of the hearing date. Does counsel have in mind any court decisions that you can go back to the date of filing the action?

"MR. HIRE: What I am addressing to the court is as to when the payment of $250 commences. The entry usually provides that . . . Is it to be made weekly or monthly?

"MR. CORE: In view of the evidence that the $35 was paid over a week ago, might ask the court the one payment be ordered and then seven day week hence on that basis. Would that be satisfactory?

"MR HIRE: Obviously, it will not be satisfactory because the defendant has no funds. I have no solution other than to make the statement that the only possible way is through employment. It is incumbent upon Frank to pay this amount as I view the matter your Honor. He has an order that the court has made. The only possible way for him to pay it is to obtain employment. Now, if he can obtain employment, he will be able to meet that payment, I will certainly advise him to do it. If he can't, he will be in contempt of court, and there will be nothing for me to do other than to bring him in here and plead him guilty.

"THE COURT: As the evidence shows, his mother has furnished all the utilities and rent required for the support and maintenance of this family. There has been no explanation why he has not furnished these, when he can earn $675 a month from Kroger Babb, and his earnings of $4900 for a ten month period of 1953 shows that he can meet the emergency either one way or the other to take care of the necessities of his family; and I don't think the court's order is out of line with the standard of his earning ability. I know of no requirement that the court's order must be based upon actual present employment. I know of no requirement on that at all. The problem of support of any one of his family is a burden that must be assumed and the court cannot assume those problems. It is his problem of how he obtains the money and whether it is from borrowing or whether he gets it from employment.

"Now, Mr. Hire, if the court understands the remarks of counsel at this time. Counsel for defendant says that we are wrong in ordering them to pay this amount and even though the evidence fails to show that he has no present means of payment. Following that line of thought, it would appear that counsel for defendant takes the position that whenever a defendant to a divorce suit appears upon a motion application for alimony and support and he has not gone to apply or has neglected to apply for positions of employment because

he anticipated employment paying as high as $12,000 a year, where in the year 1953, evidence has been produced that he made $4900, that the court is powerless to see to it that a man, who from November, 1953, has lived off the bounty of his mother, although he is physically able, that he has no duty to support his wife and children and should be excused because he has no present means of support. The court does not find that counsel for defendant can cite a statute or a case that would permit a thing like that.

"Here is a man 35 years old. Presumably he is old enough to know what his obligations to his family are. Would it take him from November to the time that this suit was filed, and the record clearly stated that he failed and neglected to help plaintiff when able to do so, the court can not close its eyes to that. Now the manner in which he produces the $250 a month plus the $100 for expense money are items that are his obligation imposed upon him by the court, based upon the showing from his own testimony as to how much he can earn a year. Here he has rested on his laurels waiting for the $12,000 a year job, and that is from his own statement which tended to show that, after this petition was filed, he felt he ought to get out and do something. The court will state that the order stands; that the $250 should be paid in monthly installments, beginning on Saturday of this week, to be paid to the Clerk of Courts.

"MR. HIRE: If the court please, the only way he can pay is to go to North American, and that will bring him in the sum of $51.05 a week. Now under present court order is this defendant going to be able to live?

"THE COURT: The testimony here today of the Defendant shows that he is able to earn, and he should have done it long ago.

"MR. HIRE: He is unable to pay this court order. He can't pay this $250 a month, as the court orders.

"THE COURT: It is the court's opinion that he has the capacity to earn. He did earn as high as $4900 during the year of 1953, and he has negotiated for a position paying as high as $12,000 a year. The court fails to see that he can't get out and earn money for the support of his wife and two children.

"MR. HIRE: The fact remains that the conditions in 1953 were different than in 1954.

"THE COURT: The fact remains also that he has not done anything toward obtaining employment. He did say he talked to some friend who made an appointment for him to see someone at North American. But the court fails to see that he has

made a sincere effort to obtain employment. The evidence shows that he does have capacity to earn. The court is always available for any other questions on this matter.

"The court rather regrets this interchanging of remarks between the court and counsel. It is hardly a normal procedure."

From the testimony adduced on behalf of Defendant, at the hearing on June 8, 1954, in support of Defendant's aforesaid motion to vacate and modify the order heretofore made and issued on April 8, 1954, and in opposition to Plaintiff's motion that Defendant should be held in contempt for failure to obey said order of April 8th, it appears:

1. That Defendant has not been employed since November 1, 1953, and since that time has enjoyed good health and has not suffered from any physical disability;

2. That, during the period from April 8, 1954, to June 8, 1954, Defendant has filed an application for employment with the U. S. Chamber of Commerce, Washington, D. C.;

3. That, within said period, Defendant has registered with the local employment office and, as a result thereof, was referred to the McLean Trucking Company whose main office is in Winston Salem, North Carolina;

4. That negotiations, concerning Defendant's employment with McLean Trucking Company, had progressed to a point where Defendant really believed that such employment would be consummated on June 2, 1954; and that Defendant did not discover that certain clearance for the establishment of a local terminal for that company had not been completed and approved until after the filing of Defendant's motion herein on June 1, 1954;

5. That Defendant really believes said employment will commence on or about June 16, 1954;

6. That Defendant's testimony is to the effect that he is willing to accept any employment offered to him;

7. That Defendant investigated an opportunity for employment with the District Manager of the Ford Motor Company which would require Defendant to drive an automobile; and that Defendant's driving rights have been revoked and will not be restored before October 1954;

8. That Defendant's opportunities for employment with prospective employers, other than the McLean Trucking Company, would, if consumated, produce earnings substantially greater than those offered by the McLean Trucking Company;

9. That Defendant has not acquired any property or earnings since April 8, 1954;

10. That, since separation of the parties herein, Defendant has been furnished board and room by his mother without any charge therefor;

11. That Defendant has purchased no clothing since the commencement of this divorce action;

12. That all money paid in to the Clerk of Courts pursuant to the aforesaid order of April 8, 1954, was borrowed from Defendant's mother, and was paid as follows:

$250.00 on April 10, 1954
$125.00 on May 8, 1954
$ 50.39 on May 25, 1954
$ 62.50 on June 7, 1954

13. That Defendant has not given or executed any notes to his mother for the amounts so loaned but feels that he is obligated to repay same at the earliest possible date from earnings he will receive from employment in the future;

14. That Defendant was unable to borrow the full amount of $250 which became due under said order on May 10, 1954, because Defendant's mother claimed that Plaintiff owed Defendant's mother one month's rental for occupancy of said mother's upstairs duplex apartment at 128½ West Temple Street, Washington C. H., Ohio, in the amount of $50.00 and that Defendant's mother also claimed that Plaintiff owed 39 cents for telephone service charges and $24.22 for electricity and gas utility services at said premises;

15. That Defendant was able to borrow from his mother the $62.50 which was paid to the Clerk of Courts on June 7, 1954, to apply on the next $250 payment which would be due under the aforesaid order on June 10, 1954; and

16. That Defendant's testimony indicated he would experience less difficulty in meeting said $250 payments if the same could be made in four equal installments over each monthly period instead of a single payment as heretofore ordered by the Court.

From the testimony adduced on behalf of Plaintiff, at said hearing on June 8, 1954, in opposition to Defendant's motion to vacate and modify the aforesaid order of April 8, 1954, and in support of Plaintiff's motion that Defendant be held in contempt of court for failure to obey said order, it appears:

(A) That Plaintiff and the two minor children of the parties moved from the upstairs duplex apartment owned by Defendant's mother to 509 East Street, Washington C. H., Ohio, on or about May 10, 1954;

(B) That said residence property now occupied by Plaintiff is owned by Mrs. Davidson and the rental thereof amounts to $65.00 per month; and that Plaintiff's sister is living with Plaintiff and is paying $15 per month on said rental;

(C) That Plaintiff has purchased an apartment size refrigerator, a bedroom suite and draperies since moving to said

premises and has become indebted therefore to the bank in the sum of $400, and is paying off said indebtedness by making payments of $20 per month;

(D) That Plaintiff has been paying $20 to $25 per week for groceries and $12 per month for milk; and also paid $19 for moving expenses, and has paid $25 in clothing purchases for said minor children;

(E) That, over one two-week period, Plaintiff paid $26 for medical services for herself;

(F) That, upon cross-examination, Plaintiff testified that it might be possible to support and maintain said two minor children and herself on the following budget:

$50 per month for house rental
$90 per month for groceries
$12 per month for milk
$24 per month for utility services
$20 per month for medical treatment for herself
$20 per month to bank on furniture loan
$15 per month for clothing

(G) That Plaintiff is willing to economize in every reasonable way concerning living expenses for the children and herself; but that said children need and require living quarters where suitable yard space is available for them.

At the close of all testimony and argument, on June 8, 1954, it was agreed by and between Plaintiff and Defendant and their respective counsel that final hearing upon Plaintiff's petition herein should be scheduled and assigned for Tuesday, June 22, 1954, at 10:00 A. M., and said trial date was approved by the Court.

The Court, having hereinabove set forth and reviewed the testimony and evidence of record in this proceeding as introduced on April 8, 1954 and June 8, 1954, comes now to consider the first branch of Defendant's motion to vacate and modify the aforesaid order made on April 8, 1954, wherein Defendant contends:

"1. That said order is unreasonable, unjust and impossible of compliance, due to lack of employment or earnings on the part of said defendant."

It is undisputed, and the records of this Court clearly show that Defendant made, or caused to be made, to the Clerk of Courts certain payments purporting to be in compliance with the aforesaid order as follows:

$250.00 on April 10, 1954
$125.00 on May 8, 1954
$ 50.39 on May 25, 1954
$ 62.50 on June 7, 1954

It is also undisputed, and equally clear, that Defendant not only failed to obtain any employment from November 1, 1953 to April 8, 1954, but also failed to obtain any employment from April 8, 1954 to June 8, 1954.

If there is any support in our law for Defendant's contention that the Court's aforesaid order is unreasonable, unjust and impossible of compliance upon the grounds that Defendant owns no property, either real or personal, and is without any employment or earnings, then Defendant's concept of the law of alimony and support payments for minor children is startling indeed.

"Thus this state of the law would operate to favor the derelict property less husband by making a virtue of his very shortcomings, perchance in respect to the very causes that gave ground for divorce; for all too frequently the fact that the party in fault is without property is clearly associated with conduct that directly led up to the necessity of separation." Lape v. Lape, 99 Oh St, pages 144 and 145.

Obviously, the allegations contained in Plaintiff's petition and the undisputed testimony of record herein show that Defendant's lack of property and lack of employment are clearly associated with such conduct on the part of Defendant that directly contributed to and brought the within proceeding before this Court.

If there is any merit to Defendant's contention that he should be exempt from temporary alimony and support payments because he is without property and earnings, although mentally qualified for an executive position and physically qualified for employment in fields of endeavor requiring lesser degrees of executive skill, then—"The seriousness and obvious injustice of such a situation is at once apparent, especially when we contemplate the very great number of worthy women who would thereby be deprived of a remedy which the law supposedly holds out to them." (Lape v. Lape, 99 Oh St, at page 145.)

This Court is of the opinion that Defendant's contention is untenable and is not supported by statutory or case law of this state; and not only should Defendant's contention be rejected but this Court must subscribe to the reasoning of the Supreme Court of Ohio in the case of Lape v. Lape, 99 Oh St 143, at pages 145 and 146, wherein that court stated:

"It is a known fact that the divorce courts, while all too frequently resorted to by folks of property, are mostly occupied in solving the domestic difficulties of those not blessed with the possession of this world's goods, and it certainly is to be granted that a good woman, who has faithfully kept the

146

marriage vows, but who has been denied the support of her husband, should in a sense be the **ward** of the court.

"It would be difficult, it seems to us, to defend the equity of the situation or to commend as really enlightened a public policy which would decree that the erring husband with property should be made to fulfill this obligation, at once moral as well as legal, while another, just as much sinning against the law of both God and man, who made good wages or salary, as the case might be, but who squandered instead of saved, should be released.

"There is no question of the effect of the decision of the court of appeals. It holds squarely that the court is absolutely without power to render any judgment for alimony whatever, unless the aggrieved wife can show that her husband is the owner of property.

"Reasonable men must agree that such a distinction is manifestly opposed to a public policy' of enlightenment and does violence to every principle of equity and fairness."

By the second branch of Defendant's aforesaid motion to vacate and modify the aforesaid order, made on April 8, 1954, said Defendant urges and contends:

"2. That said defendant has been out of employment since the 8th day of April, 1954, until the 2nd day of June, 1954; that under terms of new employment defendant will receive a gross salary of $3,600.00 per year or an approximate net of $3,346.00 or an approximate monthly salary of $279.00 per month."

At the hearing on June 8, 1954, the testimony adduced on behalf of Defendant clearly admits that such employment was not consummated on June 2, 1954 as anticipated by said motion which was filed on June 1, 1954; and that such employment "was just around the corner" in a somewhat similar fashion to the $12,000 a year job testified to by Defendant on April 8, 1954, and that, subject to certain contingencies, this last anticipated employment could commence on or about June 16, 1954.

Testimony was also introduced on behalf of Defendant to show that Defendant had investigated some other opportunities for employment which might be consummated at some future date and, if and when consummated, would produce substantially larger earnings than those set forth in branch "2" of Defendant's motion.

Upon due consideration of all of the evidence adduced on behalf of Defendant's motion to vacate and modify the order hereinbefore made and issued on April 8, 1954, and giving thereto the same weight and credibility with which the Court con-

sidered the Defendant's prior testimony, concerning earnings of $4,900.00 during the first ten months of 1953 and his opportunity for employment in an executive position at $12,000 per year, it does not appear that Defendant has established by clear and convincing evidence that any employment to be obtained by him in the future will produce smaller earnings than that which he has produced or anticipated in the past. Therefore, it must be concluded that there has been no actual change in Defendant's capabilities for employment which would justify and warrant either a vacation or modification of the aforesaid order of April 8, 1954.

The Court comes now to consider Plaintiff's motion herein filed on June 2, 1954, wherein Plaintiff contends:

"Now comes plaintiff through her attorney and says that the defendant has disobeyed the order of the Court heretofore made on the 9th day of April, 1954, concerning temporary alimony and has refused to comply with said order and therefore plaintiff asks for an order of this Court requiring defendant to appear and show cause why he should not be punished as for contempt of Court."

The files and records of this proceeding show that the Court's order of April 8, 1954, required Defendant to make temporary alimony and child support payments in the amount of $250 on the 10th day of each month during the pendency of this action beginning on April 10, 1954. It is undisputed that the files and records also show that, to date, said Defendant has made or caused to be made the following payments which have been received by the Clerks of Courts:

$250.00 on April 10, 1954
$125.00 on May 8, 1954
$ 50.39 on May 25, 1954
$ 62.50 on June 7, 1954

It is undisputed that Defendant's payment of $250 on April 10, 1954, was in complete accord with the spirit and letter of said order and that no further payment pursuant thereto was due or to become due until May 10, 1954.

It is equally clear that Defendant's partial payment of $125 on May 8, 1954, was made in advance of the next due date and therefore the balance became due on May 10, 1954, amounted to $125, and that only $50.39 of said balance was paid by Defendant after said due date.

According to Defendant's testimony, his failure to pay the entire amount of $250 which became due on May 10, 1954, arose out of certain claimed expenses for which Defendant's mother claimed that Plaintiff was indebted to Defendant's mother for rental and utility services while occupying the up-

stairs duplex apartment at 128½ West Temple Street, Washington C. H., Ohio, during the pendency of the within action.

From all of the evidence thus far adduced herein, it is undisputed that Plaintiff and Defendant occupied said apartment from October 1952 to the time of their separation late in March of 1954 and that, during such occupancy by Plaintiff and Defendant and their children, Defendant's mother made no charge at any time for rental and in addition thereto voluntarily paid for all utility services without claiming or attempting to collect any charges for said services.

The evidence of record herein also shows that, prior to separation of Plaintiff and Defendant, Plaintiff had repeatedly requested Defendant to procure and obtain living quarters which would not require Plaintiff to go up and down stairs because Plaintiff's doctors had advised Plaintiff to avoid using stairs due to her spinal and pelvic condition from which she had suffered since February 1953; and that Defendant had failed to obtain housing accommodations where Plaintiff could avoid the necessity of going up and down stairs.

The record is completely silent concerning any rental agreement entered into by and between Plaintiff and Defendant's mother and there is no evidence to show that Defendant's mother gave any notice to or made any demand upon Plaintiff concerning said charges at any time after said child support and temporary alimony order of April 8, 1954, or at any time in advance of Defendant's failure to make the full payment of $250 which became due under said order on May 10, 1954.

Nor does it appear that Plaintiff and the two small children remained in said upstairs duplex apartment beyond the earliest possible date on which Plaintiff was able to contract for and move to their present residence at 509 East Street, Washington C. H., Ohio.

Defendant's testimony, at the hearing on June 8, 1954, does show that Defendant caused $175.39 to be paid as and for temporary alimony and child support for the period from May 10, 1954 to June 9, 1954, and that the unpaid balance which Defendant failed to pay, amounting to $74.61, was not paid because Defendant's mother claimed that Plaintiff was indebted to Defendant's mother for the following items and amounts:

> Rent for upstairs apartment _____ $50.00
> Telephone charges _____ .39
> Gas & Electric utility service _____ 24.22
>
> TOTAL _____ $74.61

It is axiomatic that Defendant's mother is not a party to this proceeding, and that said claims which Defendant's mother has appeared to claim as properly chargeable against the Plaintiff and said minor children as set forth above, are not appropriate subject matter over which the Court has acquired any jurisdiction in this proceeding and therefore cannot be adjudicated in this action. It is equally clear that, as a stranger to this proceeding, Defendant's mother must invoke the jurisdiction of some court by appropriate legal proceedings before any court could determine that she is lawfully entitled to recovery of said $74.61 from the Plaintiff upon such claims. This Court would indeed be derelict in performing its duty if it were to allow such deduction arrangement, between Defendant and Defendant's mother, to supersede and modify its order heretofore made on April 8, 1954.

In opposing Plaintiff's motion for contempt, Defendant contends that the principles of law set forth and discussed in the case of Borror v. Borror, 17 O. D. 147, are applicable to the case at bar. In that case the court held:

"A husband who has been ordered to pay a sum of money down and monthly payments as alimony is not in contempt for refusing to obey the order, if it is not shown that his income during the time in question was sufficient to enable him to comply with the order, and if he shows that he attempted to raise the required amount by mortgaging his real estate, but his wife refused to join in the mortgage deed."

In that case it is clearly apparent that the wife's refusal to join in such mortgage precluded the husband from making such payments from the sole remaining source from which such funds could be raised and that the husband, after exhausting all other sources, had made a reasonable and diligent effort to provide said funds from that single remaining source.

From the evidence of record in this proceeding, it does not appear that Defendant opposed his mother's desire to so charge and collect said $74.61 from Plaintiff; or that Defendant remonstrated and urged upon his mother the serious consequences which could result from Defendant's failure to carry out the spirit and the letter of this Court's order heretofore issued on April 8, 1954; and, therefore, it must be presumed and concluded that Defendant was agreeable to and in accord with the proposal by which Defendant's mother claimed and presumed to recover said $74.61 by claiming same as a credit against the $250 which Defendant was under order of this Court to pay to the Clerk of Courts on account of Plaintiff herein on the 10th day of May 1954.

In the light of such facts of record and the inferences which

may be reasonably deduced therefrom, this Court is not satisfied that Defendant made a reasonable and diligent effort to comply with said order on May 10, 1954, and must, therefore, find that Defendant is in contempt of court for said failure to comply therewith; and that Defendant still remains obligated under said order to pay said $74.61 before Defendant can be purged of such contempt of court.

It is also clear that Defendant's partial payment of $62.50 on June 7, 1954, was intended to be made in advance of the due date, and that the balance which became due on June 10, 1954, amounted to $187.50 for the period beginning June 10, 1954; and that, therefore, on June 10, 1954, the files and records of this Court show that said Defendant had accumulated an arrearage in said alimony and support payments of $262.11 which are over due and unpaid.

Again, it is pointed out that Defendant's testimony fails to show that Defendant had made or was making a reasonable and diligent effort to inform and impress upon the source of his funds that orders for the payment of child support and alimony are strictly enforced by the courts and that Defendant must sustain the punishment provided by law upon failure to comply with said order of this Court.

Therefore the Court must find that Defendant is in contempt of court for failure to pay the full amount of $250 as of June 10, 1954, in accordance with the aforesaid order of this Court; and that by reason thereof Defendant still remains obligated under said order to pay total arrearages amounting to $262.11 before Defendant can be purged of contempt of court in this proceeding.

## CONCLUSION

Upon due consideration of all evidence of record and arguments of counsel, and for all of the reasons hereinabove set forth and discussed, the Court finds and orders:

1. That Defendant's motion herein filed on June 1, 1954, is not well made and should be overruled as to each of its separate branches and in its entirety;

2. That Plaintiff's motion herein filed on June 2, 1954, is well made and should be sustained; and that Defendant should be held in contempt of court for the reasons and upon the grounds hereinabove set forth and discussed;

3. That, on the Court's own motion, Defendant should be granted to and including June 18, 1954, to pay the aforesaid arrearages in the total sum of $262.11 and thereby purge himself of said contempt of court; and

4. That, upon Defendant's failure to so purge himself of such contempt of court by on or before said date, said Defendant should be punished for contempt of court as provided by law.

To all of which decision, findings and order counsel for parties herein interpose their respective exceptions and said exceptions are noted of record.